**23-1185**

IN THE

# United States Court of Appeals

## FOR THE THIRD CIRCUIT

◆◆

ARTOSS, INC.,

*Plaintiff-Appellee,*

—v.—

ARTOSS GMBH,

*Defendant-Appellant,*

THOMAS GERBER; WALTER GERIKE,

*Defendants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

## REPLY BRIEF FOR DEFENDANT-APPELLANT

SHERMAN W. KAHN
MASCHOFF BRENNAN LLP
15 West 26th Street, 7th Floor
New York, New York 10010
(212) 529-5131

MARC J. PERNICK
JASON R. BARTLETT
MASCHOFF BRENNAN LLP
450 Sansome Street, Suite 1005
San Francisco, California 94111
(415) 739-6228

*Attorneys for Defendant-Appellant*

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ..................................................... iii

I.   Undisputed Facts Compel Reversal of The Wrongful
     Termination Verdict and Damages Award ................................ 1

     A. ARTOSS GmbH Specifically Instructed Distributor Not to
        Rebrand NanoBone®; Distributor Admits That It Ignored
        Those Instructions....................................................... 3

     B. Miscellaneous References to Trademarks and Prosecution
        Budgets Cannot Establish Authorization............................... 7

     C. The Agreement and the Lanham Act Reserve for ARTOSS
        GmbH the Exclusive Right to Decide Whether Distributor
        "Helped" Its Brand....................................................... 9

     D. ARTOSS GmbH Did Not Waive the Right to Challenge the
        Jury's Verdict on "Loss of Control"................................... 14

II.  This Court Should Order a New Trial Because the District Court
     Erred By Instructing the Jury On "Nominative Fair Use" ............... 15

     A. Distributor Waived Its Nominative Fair Use Defense ............... 15

     B. Even If Not Waived, The District Court Should Not Have
        Given A Nominative Fair Use Instruction ........................... 17

        1. Standard of review ................................................ 17

        2. Nominative fair use does not apply .............................. 17

III. This Court Should Order a New Trial Because the District Court
     Abused Its Discretion By Excluding ARTOSS GmbH's Evidence
     Regarding Distributor's Inventory Management Practices and
     Failure to Apply "First-In-First-Out" Practices ........................ 20

     A. ARTOSS GmbH's Evidence Regarding Inventory
        Management and FIFO Was Relevant................................. 20

PAGE

B. The FIFO Evidence Would Also Have Been Admissible
Under FRE 403 ............................................................ 23

C. The District Court's Errors Were Not Harmless ..................... 25

IV. This Court Should Reverse The Trial Court's Denial of ARTOSS
GmbH's Cross-Motion to Amend The Judgment, and Order
Transfer of Trademarks and Domain Names ............................ 26

CONCLUSION ................................................................ 29

CERTIFICATE OF BAR MEMBERSHIP ..................................... 31

CERTIFICATE OF COMPLIANCE UNDER
FRAP 32(a) AND THIRD CIRCUIT LAR 31.1(c) ......................... 32

CERTIFICATE OF SERVICE ................................................. 33

# TABLE OF AUTHORITIES

PAGE(S)

## Cases

*Abercrombie & Fitch Co. v. Hunting World, Inc.*,
  537 F.2d 4 (2d Cir. 1976) .......................................... 27, 28, 29

*Ansell v. Green Acres Contracting Co.*,
  347 F.3d 515 (3d Cir. 2003) ............................................. 23

*Aromatique, Inc. v. Gold Seal, Inc.*,
  28 F.3d 863 (8th Cir. 1994) .............................................. 28

*Cent. Mfg., Inc. v. Brett*,
  492 F.3d 876 (7th Cir. 2007) ............................................ 28

*Citigroup Inc. v. Capital City Bank Group Inc.*,
  637 F.3d 1344 (Fed. Cir. 2011) .......................................... 11

*Connecticut Mut. Life Ins. Co. v. Wyman*,
  718 F.2d 63 (3d Cir. 1983) .......................................... 17, 19

*DirecTV, LLC v. WNK Assocs., Inc.*,
  No. 6:22-CV-00423-JDK, 2023 WL 3612351 (E.D. Tex. May 4,
  2023), report and recommendation adopted,
  2023 WL 3605969 (E.D. Tex. May 23, 2023) ........................... 16

*E.T. Browne Drug Co. v. Cococare Prod., Inc.*,
  538 F.3d 185 (3d Cir. 2008) ...................................... 26, 27, 28

*Empresa Cubana del Tabaco v. Culbro Corp.*,
  541 F.3d 476 (2d Cir. 2008) ........................................ 27, 28

*Etonic Worldwide, LLC v. Kinetic Sports, Inc.*,
  No. Civ. 05-4004 (GEB), 2005 WL 3527249
  (D.N.J. Dec. 22, 2005) ............................................. 12, 13

*Fair Isaac Corp. v. Experian Info. Sols. Inc.*,
  711 F. Supp. 2d 991 (D. Minn. 2010) .................................... 28

*Faulman v. Sec. Mut. Fin. Life Ins. Co.*,
  353 F. App'x 699 (3d Cir. 2009) ........................................ 17

*Firefly Digital Inc. v. Google Inc.*,
  817 F. Supp. 2d 846 (W.D. La. 2011) .................................... 26

PAGE(S)

*Forrest v. Parry*,
930 F.3d 93 (3d Cir. 2019) ...................................... 20, 21, 22, 23

*Gibson Brands, Inc. v. John Hornby Skewes & Co. Ltd.*,
No. CV 14-00609 DDP, 2014 WL 4187979
(C.D. Cal. Aug. 22, 2014) ................................................. 16

*GN Netcom, Inc. v. Plantronics, Inc.*,
930 F.3d 76 (3d Cir. 2019) ........................................... *passim*

*Holley Performance Prod., Inc. v. Quick Fuel Tech., Inc.*,
624 F. Supp. 2d 610 (W.D. Ky. 2008) .................................... 27

*Hunziker v. Scheidemantle*,
543 F.2d 489 (3d Cir. 1976) .............................................. 19

*LumaSense Techs., Inc. v. Advanced Eng'g Servs., LLC*,
No. 20-CV-07905-WHO, 2021 WL 2953237
(N.D. Cal. July 14, 2021) ................................................. 16

*Manganaro Foods, Inc. v. Manganaro's Hero-Boy, Inc.*,
No. 01 Civ 0849 (JGK), 2002 WL 1560789
(S.D.N.Y. July 15, 2002) ................................................. 28

*McQueeney v. Wilmington Tr. Co.*,
779 F.2d 916 (3d Cir. 1985) ................................... 22, 23, 24, 25

*Mosley v. Wilson*,
102 F.3d 85 (3d Cir. 1996) ........................................... 18, 19

*Nasalok Coating Corp. v. Nylok Corp.*,
522 F.3d 1320 (Fed. Cir. 2008) .......................................... 26

*Neva, Inc. v. Christian Duplications Int'l, Inc.*,
743 F. Supp. 1533 (M.D. Fla. 1990) ................................. 27, 28

*OBX-Stock, Inc. v. Bicast, Inc.*,
558 F.3d 334 (4th Cir. 2009) ............................................. 27

*Pasadena Tournament of Roses Ass'n v. City of Pasadena*,
No. 2:21-CV-01051AB-JEMx, 2021 WL 3553499
(C.D. Cal. July 12, 2021) ................................................. 17

PAGE(S)

*Reiffer v. Moeller*,
    No. CV20-00561-TUCRM(LAB), 2021 WL 4636047
    (D. Ariz. Oct. 7, 2021) ..................................................... 16

*Renda v. King*,
    347 F.3d 550 (3d Cir. 2003) .......................................... 23, 25

*Rolick v. Collins Pine Co.*,
    975 F.2d 1009 (3d Cir. 1992)............................................ 20

*S & R Corp. v. Jiffy Lube Int'l, Inc.*,
    968 F.2d 371 (3d Cir. 1992) .............................................. 13

*Tiffany & Co. v. Costco Wholesale Corp.*,
    994 F. Supp. 2d 474 (S.D.N.Y. 2014) .................................. 29

*Toledo Mack Sales & Serv., Inc. v. Mack Trucks, Inc.*,
    386 F. App'x 214 (3d Cir. 2010)......................................... 23

*United States v. Himelwright*,
    42 F.3d 777 (3d Cir. 1994) ............................................... 23

*Wells Fargo Bank, N.A. v. Carnell*,
    No. 3:16-CV-130, 2018 WL 2994393 (W.D. Pa. June 14, 2018) ....... 16

*Woodson v. Scott Paper Co.*,
    109 F.3d 913 (3d Cir. 1997) .............................................. 19

## Statutes

15 U.S.C. § 1051, *et seq.* (Lanham Act) ................................. *passim*

## Rules

Fed. R. Ev. 401 ............................................................. 21

Fed. R. Ev. 402 ............................................................. 21

Fed. R. Ev. 403 .......................................................... 23, 24

Rule 8(c) ................................................................... 16

Distributor's brief fails to dispute, and in most cases admits, the facts that compel reversal of the judgment below.

## I.    Undisputed Facts Compel Reversal of The Wrongful Termination Verdict and Damages Award

Distributor fails to dispute the facts that compel reversal of the verdict finding ARTOSS GmbH's termination of the Agreement in April 2021 was wrongful, and the award of damages for price increases implemented in June 2021, after that termination.

Distributor admits that ARTOSS GmbH owns the registered standard character mark NanoBone®.  Distributor's Brief ("DistBr.") 9; AppxA258; AppxA335; AppxA725.  It admits that, in 2016, ARTOSS GmbH participated in creating the only approved stylization of NanoBone®:



DistBr. 10; AppxA664-64.  Distributor does not deny that it nonetheless registered the "O" stylization (which it calls the "OSphere") appearing in the middle of this approved stylization of NanoBone® – in Distributor's name – in 2019, after the Parties began disputing unpaid-for inventory.  AppxA483-85; AppxA661.  Distributor admits that it then accused both ARTOSS GmbH and its authorized UK

Distributor of infringing this "OSphere" stylization mark in March 2021. DistBr.16, n. 6; AppxA706-712; AppxA485-91.

Distributor likewise does not deny that it conducted a rebranding exercise in late 2020 and 2021, when the Parties were already in litigation, in which, unlike in 2016, it *did not* involve ARTOSS GmbH. AppxA494-496; AppxA797-806; AppxA700; AppxA741-42. It does not deny, and the documents clearly show, that ARTOSS GmbH *specifically* instructed Distributor not to rebrand. AppxA700; AppxA741-42. Distributor does not deny that it created, widely used, and continued – even through trial – to use the following new stylization on websites and social media:



AppxA476-477; AppxA743-768; AppxA798; AppxA808-24.

Distributor also admits that it switched its primary website to the "nanobone.us" domain in March 2021. DistBr. 24; AppxA478-479; AppxA745-50. It also does not deny that it referred to itself as the owner of the NanoBone logo on its website's Terms of Service and in its brand manual, though it asserts that these were "mistakes" that few people saw. DistBr. 17, n. 6; AppxA497-500; AppxA798; AppxA749; A268-70. Distributor does not even bother to deny that Distributor undertook these actions in an attempt to gain exclusive control over the

NanoBone® brand in the U.S., and to use that control as leverage against ARTOSS GmbH.

Faced with this undisputed record, Distributor instead asserts that ARTOSS GmbH somehow "authorized" its actions and, even if unauthorized, Distributor claims it did not create "harm" sufficient to trigger the termination provision of Section 11.3(b) of the Agreement. The former argument fails as a matter of undisputed fact, the latter as a matter of law.

### A.    ARTOSS GmbH Specifically Instructed Distributor Not to Rebrand NanoBone®; Distributor Admits That It Ignored Those Instructions

The undisputed evidence refutes Distributor's argument that the jury could have found its conduct was "authorized." Even Distributor acknowledges that ARTOSS GmbH specifically instructed Distributor in April 2021 to cease all use of its new stylization of the word NanoBone®, and to stop using NanoBone.us as its domain name. DistBr. 15-16; AppxA769-71. Distributor admits that it refused to follow ARTOSS GmbH's instructions because it considered them "improper." DistBr. 16. Distributor does not deny that it continued to defy those instructions even through trial. AppxA260-61; AppxA476-88; AppxA520. Thus, even if April 2021 was the first time ARTOSS GmbH specifically instructed Distributor to stop all rebranding – which, as discussed below, it *was not* – Distributor's admitted

3

conduct *after* April 2021 would suffice to overturn the verdict that ARTOSS GmbH's termination of the Distributor Agreement was wrongful.

Distributor also does not deny that the price increases that were the *sole* basis for the jury's damage award did not take effect until June 2021. AppxA329-31; AppxA618-619; AppxA699. In other words, the only conduct for which the jury awarded damages *also* came after more than a year of litigation. Therefore, the same undisputed facts compel reversal of the damages award as well. If ARTOSS GmbH properly terminated the Distributor Agreement in April 2021, then there is no contractual basis for an award of damages tied to price increases first implemented in two months later in June 2021.

Distributor suggests that its refusal to follow ARTOSS GmbH's instructions cannot justify termination because they came "nearly one year into the underlying lawsuit." DistBr. 15. However, no law or contractual language suggests that Distributor's post-lawsuit conduct cannot trigger the termination clause of Section 11.3. A480:13-20. When this *lawsuit started* is irrelevant. What matters is that the evidence shows beyond question that Distributor intentionally breached the trademark provisions of the Agreement *before ARTOSS GmbH terminated*, and before it caused any of the alleged harm for which the jury awarded damages.

Distributor's claim that "prior to [the April 2021] letter [ARTOSS] GmbH had never once objected to [Distributor's] substantial branding and marketing

efforts ..." (DistBr. 16) also is inconsistent with the evidence.  On January 5, 2021,

Distributor initially told ARTOSS GmbH that it was "in the process of updating

and refreshing our brand mark."  AppxA698.  ARTOSS GmbH instructed

Distributor to stop:

> I am writing in response to your email of 5 January 2021 regarding
> the NanoBone brand mark, marketing materials and packaging.
> ARTOSS GmbH has taken the decision to unify its packaging around
> the world.  As such, when the current stock of United States
> packaging is exhausted, it is our intention to begin shipping product to
> the United States using the design of ARTOSS GmbH.  Accordingly,
> there is no need [for] Artoss, Inc. to engage in updating or refreshing
> any marks for NanoBone.  Rather, we request your cooperation in
> using the materials reflecting our international brand.

A700.

Distributor defied these instructions, asserting on January 29, 2021, that the

instructions were "highly inappropriate," and that it needed to "control its own

branding and packaging" to "protect its exclusive distribution rights in the United

States."  AppxA739-40.  On February 10, 2021, ARTOSS GmbH repeated its

instructions:

> [W]e understand that [Distributor] may prefer to have the ability to
> control its own branding and packaging, but [Distributor] does not
> have the right to do so under the Distributor Agreement.

> * * *

> [ARTOSS] GmbH remains the sole owner of the branding and has
> every right to exercise its control of the product packaging under the
> Distributor Agreement.

> * * *

5

> We reiterate that there is no need for [Distributor] to engage in
> updating or refreshing any branding or packaging for NanoBone.

AppxA741-42.

There is no question that Distributor refused to comply with these

instructions.  It admitted this at trial:

> Q: [Y]ou're aware that during the course of this litigation, letters have
> been sent asking you to cease and desist using those NanoBone logos
> and the NanoBone name as your web presence; correct?
>
> A: Yes.  I was in receipt of those letters.
>
> Q. Okay.  And you have refused to comply; correct?
>
> A. Counselor, those letters were received subsequent to the beginning
> of this litigation. . . . So no, we did not immediately cease and desist
> in response to that demand letter.
>
> * * *
>
> Q. But you believe that you have the right to use that name and that
> logo in any event; correct?
>
> A. That style, yes, I do.
>
> * * *
>
> Q. You believe that ARTOSS GmbH has no right to tell you what to
> do with respect to those websites; right?
>
> A. I believe that under the terms of the Distribution Agreement, we
> are responsible for the promotion and we are able to use those - - that
> logo and the stylized NanoBone, yes.
>
> Q. So if you want to use NanoBone as your URL and ARTOSS
> GmbH directs you not to, you believe that it is within your control to
> say no; right?
>
> A. Subsequent to the outcome of this litigation, yes, I do.

AppxA478-480.

On this undisputed record, no reasonable juror could conclude that ARTOSS GmbH "acquiesced" in Distributor's rebranding project, or the use of its trademark as the URL for Distributor's primary website.  The trial evidence proved that ARTOSS GmbH objected to the proposed rebranding *multiple* times *in writing* beginning in January 2021 before the rebranding got released.  Distributor had *months* to comply, but instead released the new branding in March 2021, before ARTOSS GmbH finally terminated in April 2021.  Distributor had many more months after termination to reconsider and comply before the November 2022 trial. It refused to do so.  This non-compliance indisputably supports termination. AppxA647, § 11.3(b).

### B. Miscellaneous References to Trademarks and Prosecution Budgets Cannot Establish Authorization

Against this overwhelming irrefutable evidence, Distributor argues that the jury could have concluded that ARTOSS GmbH implicitly authorized the same conduct that it expressly forbade in writing.  Distributor relies first on the Parties' cooperation in 2016 for the approved NanoBone stylization.  As Distributor admits, however, that branding was done "in coordination with Gerber and Gerike" and ARTOSS GmbH was "involved in and approved" that branding.  DistBr. 9-10. Distributor could have involved ARTOSS GmbH in 2020 and 2021 but did not, instead rejecting specific instructions.  Unlike 2016, the whole point of the

rebranding exercise was to deprive ARTOSS GmbH of control over U.S. branding to strengthen Distributor's hand in the dispute.

Distributor also cites miscellaneous management reports, budgets, and occasional documents where it used "TM" between 2016 and 2019 as purported evidence that ARTOSS GmbH irrevocably ceded control over NanoBone® to Distributor.  DistBr. 12-13. None of these documents constitutes notice to ARTOSS GmbH of Distributor's intent to rebrand the NanoBone® mark over ARTOSS GmbH's objection, let alone ARTOSS GmbH's approval of such a rebrand.  Distributor *knew* that ARTOSS GmbH was unaware of Distributor's rebranding, which is why Distributor sent the notice email on January 5, 2021 (*months* into its secret project).  AppxA698.

Even were there evidence that ARTOSS GmbH knew before January 5, 2021 that Distributor intended to seize control of the NanoBone® brand, nothing shows that ARTOSS GmbH waived its exclusive trademark rights under the Agreement, which contains express provisions limiting modifications and waiver.  AppxA648, § 13.5.  Even if miscellaneous management reports could have suggested to a careful reader that Distributor was conducting trademark-related activity, Distributor still had to comply with ARTOSS GmbH's instructions.  As shown above, Distributor admits that it did not do that. AppxA478-480.

**C.    The Agreement and the Lanham Act Reserve for ARTOSS GmbH the Exclusive Right to Decide Whether Distributor "Helped" Its Brand.**

Distributor argues that the termination provision of Section 11.3 was not triggered because ARTOSS GmbH did not prove that Distributor's actions "adversely affect[ed] the . . . trademark rights of [ARTOSS GmbH]."  DistBr. 8. This argument fails as a matter of law, both under the contract and the Lanham Act.  First, the Agreement expressly reserves to ARTOSS GmbH the right to "reasonably determine[]" whether Distributor's actions harm its trademarks. AppxA647.  Distributor defiantly refused to allow ARTOSS GmbH to determine how its NanoBone® trademark was styled, and where it was used as a domain name, and displayed on websites and social media.  It was more than "reasonabl[e]" for ARTOSS GmbH to conclude that this harmed its mark.

The Agreement reserves control over trademarks, branding, and packaging to ARTOSS GmbH.  Section 8.1 gives ARTOSS GmbH exclusive ownership of all "trademarks" and "trade names" related to NanoBone® products.  AppxA645. Section 8.6 requires Distributor to comply with all trademark usage guidelines that ARTOSS GmbH might communicate.  AppxA645-46.  Section 8.6 precludes Distributor from attempting to register or claiming any interest in any ARTOSS GmbH trademark.  AppxA646.  Distributor admits that all these terms are part of the Agreement.  DistBr. 8-9.

If contract language like that is insufficient to stop Distributor from claiming the exclusive right to display the word "NanoBone®" in a style of its choosing, adopting NanoBone® as its corporate identity, and using NanoBone.us as its primary domain name, then what *would* be sufficient?  ARTOSS GmbH's opening brief analogized Distributor to a Coca-Cola or Amazon distributor deciding to independently restyle the corporate logos on the sides of their delivery trucks over the objections of the mark owners.  Such conduct would be a shocking violation of the mark owners' exclusive rights which no court would allow to persist regardless of whether the mark owners could show they lost sales.  Distributor ignores the challenge because it has no principled basis to distinguish its conduct from the hypothetical.[1]

The Lanham Act cases cited in ARTOSS GmbH's opening brief establish that such "loss of control" is a recognized form of harm to a trademark. Distributor improbably, and with no support, argues that the Lanham Act has "no place in the discussion" of what conduct might reasonably be determined to harm a trademark.  DistBr. 38-39.  A trademark is intangible intellectual property that, like

---

[1] Distributor implies that these contract provisions do not apply because the Parties amended the agreement to remove certain unrelated termination provisions. DistBr. 31. There is no dispute that Article 8 and Section 11.3(b) are still part of the Agreement.  To evaluate what conduct "adversely affects" a trademark with reference to the Agreement as a whole – especially the provisions expressly addressing trademarks and branding rights – is perfectly reasonable.

all intellectual property, exists because laws like the Lanham Act create it. One can adversely affect *tangible* property by stealing it, throwing it off a cliff, or lighting it on fire. *Intellectual* property is adversely affected by infringing upon the exclusive rights that the law reserves to its owner. Where else but trademark law (such as the Lanham Act) would one look to understand the scope of those exclusive rights?

Distributor argues that ARTOSS GmbH owns "only the non-stylized word mark, 'NanoBone'" as if that somehow limits ARTOSS GmbH's right to control the mark's stylization. DistBr. 34-35. Contrary to Distributor's unsupported argument, a standard character mark's licensee has no right to dictate the stylization, display, and use of the mark over the express instructions of the registered owner. To the contrary, "[i]f the registrant ... obtains a standard character mark without claim to any particular font, style, size or color, the registrant is entitled to depictions of the standard character mark regardless of font style, size, or color." *Citigroup Inc. v. Capital City Bank Group Inc.*, 637 F.3d 1344, 1353 (Fed. Cir. 2011).

ARTOSS GmbH's cited cases establish that loss of control over a mark is a classic form of harm. Distributor weakly attempts to distinguish such cases, saying they were decided in the context of motions for preliminary injunction. DistBr. 39, n. 10. That only *enhances* their relevance. If courts regularly hold that loss of

11

control provides the basis for findings of "irreparable harm," then it was indisputably reasonable for ARTOSS GmbH to conclude that loss of control adversely affected its mark for purposes of termination under Section 11.3.[2]

Distributor also argues that cases like *Jiffy Lube* are distinguishable because they involve a "preliminary injunction motion under the Lanham Act — not a contract — to prevent the franchisee from using its trademark following termination." DistBr. 39. Distributor's argument ignores *Etonic Worldwide, LLC v. Kinetic Sports, Inc.*, No. Civ. 05-4004 (GEB), 2005 WL 3527249 (D.N.J. Dec. 22, 2005), cited at pages 30-33 of the Opening Brief, involving both the Lanham Act and breach of contract claims.

Etonic purported to terminate Kinetic's license for shoe-related trademarks in part on grounds that Kinetic sold shoes to a "discounter" which was prohibited under the contract. 2005 WL 3527249 at *2. To determine whether a preliminary injunction should issue, the court analyzed whether Etonic had shown a reasonable probability of success in proving that the license agreement was properly terminated. *Id.* at *6. It found that it had. *Id.* at *7.

The court analyzed irreparable harm. It found that "Kinetic ha[d] repeatedly sought to impede Etonic's exercise of its right to control the Etonic Trademarks and

---

[2] The Agreement supports this view. In Section 8.3, Distributor expressly agrees that any violation of the Agreement's trademark provisions constitute irreparable harm.

brand" in the face of contract provisions (similar to those of the Agreement at issue here) that reserved trademark control for Etonic. *Id.* at *16-17. On that basis, the court found that the Etonic had satisfied its burden to demonstrate irreparable harm. *Id.* at *17. Thus, whether under the Lanham Act or contract law, loss of control demonstrates "harm" to a trademark.

The test for harm that Distributor advocates is "lost sales." DistBr. 17. Distributor cites no precedent supporting such a test, however. Such a test would be both too narrow and too broad. Etonic did not demonstrate that it lost sales because Kinetic had sold shoes to the discounter. If anything, the discount channel probably *increased* its sales. But it was still harmed because it lost the ability to control the reputation of its mark by precluding sales of shoes bearing the mark to discounters. *Etonic*, 2005 WL 3527249 at *16. Similarly, in *Jiffy Lube*, this Court held that the licensee harmed the mark, even if the trademark was being put to better use. *See S & R Corp. v. Jiffy Lube Int'l, Inc.,* 968 F.2d 371, 378 (3d Cir. 1992).

In contrast, ARTOSS GmbH has never asserted that Distributor harmed its mark because Distributor's sales results fell woefully behind the targets set out in the Agreement. Distributor's poor performance probably *did* harm the NanoBone® mark in the sense that Distributor failed to properly promote the brand in the United States. However, such poor performance could not reasonably be

characterized as "adversely affecting" ARTOSS GmbH's NanoBone® mark if Distributor were in full compliance with ARTOSS GmbH's trademark-related instructions.  Lost sales evidence is irrelevant.

### D.    ARTOSS GmbH Did Not Waive the Right to Challenge the Jury's Verdict on "Loss of Control"

Distributor suggests ARTOSS GmbH somehow waived the right to argue on appeal that Distributor's actions caused it to suffer a "loss of control" of its NanoBone® trademark.  Facts supporting loss of control are addressed in ARTOSS GmbH's opening brief and are directly relevant to whether a reasonable jury could have found that ARTOSS GmbH's termination of the Agreement in April 2021 was wrongful.

Distributor's convoluted reasoning appears to be that if ARTOSS GmbH were correct that Distributor caused a loss of control of its mark, that would *also* mean Distributor *infringed* the NanoBone® mark.  Distributor claims erroneously that ARTOSS GmbH did not appeal infringement and argues ARTOSS GmbH is thus precluded from citing any facts or law underlying an infringement claim in support of any of the *other* issues that it undisputedly *did* preserve for appeal.  This argument fails on multiple levels.

First, ARTOSS GmbH *did* appeal from the verdict of no infringement.  Its notice of appeal is directed in part to the *judgment*, which in turn finds against ARTOSS GmbH on "trademark-related counterclaims."  AppxA2.

14

Second, just because ARTOSS GmbH has challenged one aspect of the verdict based on a certain set of facts does not mean that ARTOSS GmbH *must also* appeal every other aspect of the verdict to which the same facts may also be relevant.  It need not clutter its appeal with ancillary legal issues just to preserve the argument that Distributor's conduct triggered the termination provision of Section 11.3.  If the Agreement is terminated, then Distributor has no license to use the NanoBone® trademark in the future.  ARTOSS GmbH does not need the additional relief, if any, that a finding of infringement would support.

## II.    This Court Should Order a New Trial Because the District Court Erred By Instructing the Jury On "Nominative Fair Use"

If the Court does not reverse, then at a minimum it should order a new trial because the district court erred by instructing the jury on an irrelevant and confusing nominative fair use defense.  Distributor waived that defense, it does not apply, and it likely confused the jury.

### A.    Distributor Waived Its Nominative Fair Use Defense

Distributor argues that pleading "justification" "include[d] nominative fair use[.]"  DistBr. 42.  It does not.  Nominative fair use is a specific defense with defined elements.  It is not a species of "justification," and  Distributor cites no authority treating it as such.

Liberal pleading standards do not save Distributor.  DistBr. 42 (citing *Moody v. Atl. City Bd. of Educ.*, 870 F.3d 206, 218 (3d Cir. 2017).  If pleading as an

affirmative defense that a party "was, at all times, justified in its actions" (AppxA92) sufficed, then it would suffice for virtually *any* defense. No defendant would need to plead any defense beyond, "I was justified." Under Rule 8(c), "nominative fair use" must be separately pleaded and cannot be grouped with traditional "fair use," and/or "descriptive use" because "[e]ach of the asserted fair use defenses are separate defenses with unique elements to be proven[.]" *See DirecTV, LLC v. WNK Assocs., Inc*., No. 6:22-CV-00423-JDK, 2023 WL 3612351, *4 (E.D. Tex. May 4, 2023), report and recommendation adopted, 2023 WL 3605969 (E.D. Tex. May 23, 2023).[3] If such grouped pleading fails to satisfy Rule 8(c), then how can "I was justified" be enough?

Although courts *may* allow a defendant to assert such a defense in *some* circumstances, that is not the absolute rule. *See Wells Fargo Bank, N.A. v. Carnell*, No. 3:16-CV-130, 2018 WL 2994393, *9 (W.D. Pa. June 14, 2018) (granting summary judgment against defendant and rejecting assertion of an unpled affirmative defense). Given the nuance and complexity that a nominative fair use analysis entails, Distributor prejudiced ARTOSS GmbH's ability to educate the district court on the defense and fully consider its relevance.

---

[3] *See also Reiffer v. Moeller*, No. CV20-00561-TUCRM(LAB), 2021 WL 4636047, *2 (D. Ariz. Oct. 7, 2021); *LumaSense Techs., Inc. v. Advanced Eng'g Servs., LLC*, No. 20-CV-07905-WHO, 2021 WL 2953237, *6, n. 2 (N.D. Cal. July 14, 2021); *Gibson Brands, Inc. v. John Hornby Skewes & Co. Ltd.,* No. CV 14-00609 DDP (SSx), 2014 WL 4187979, *5 (C.D. Cal. Aug. 22, 2014).

**B.**    **Even If Not Waived, The District Court Should Not Have Given A Nominative Fair Use Instruction**

### 1.  Standard of review

The trial court erred by instructing the jury on an irrelevant defense.  The review on appeal is plenary, not "abuse of discretion" as Distributor argues.  *See Faulman v. Sec. Mut. Fin. Life Ins. Co*., 353 F. App'x 699, 705 (3d Cir. 2009) (plenary review of whether to instruct on indemnification); *Connecticut Mut. Life Ins. Co. v. Wyman*, 718 F.2d 63, 64-65 (3d Cir. 1983) (plenary review of whether to give instruction on Pennsylvania insurance law).

### 2.  Nominative fair use does not apply

Distributor never explains how nominative fair use applies.  It does not answer the question to say it is an "affirmative defense."  DistBr. 45.  ARTOSS GmbH never challenged Distributor's use of the NanoBone® mark in an authorized stylization to identify a genuine NanoBone® product.  It challenged Distributor improperly taking control of the mark.  For this reason, Distributor's reliance on *Pasadena Tournament of Roses Ass'n v. City of Pasadena*, No. 2:21-CV-01051AB-JEMx, 2021 WL 3553499, *5 (C.D. Cal. July 12, 2021) (using the "Rose Bowl" mark to describe the Rose Bowl), is misplaced.  DistBr. 46.

The most pertinent case is *Faulman*, 353 F. App'x at 705, where this Court held it was error to instruct the jury on an "indemnification clause [that] was not even being relied on by [defendant] in th[e] litigation[.]"  All Distributor can say is

that case involved an unnecessary contract provision rather than an unnecessary affirmative defense.  DistBr. 47.  That is a distinction without a difference.

Distributor falsely claims that ARTOSS GmbH wrote the instruction.  DistBr. 45.  Actually, Distributor first raised the defense in a pre-trial disclosure, and proposed an instruction a few days later.  ARTOSS GmbH only proposed an alternative version that the court could use if it decided to give an instruction.  Furthermore, Distributor *admits* that ARTOSS GmbH preserved its objection to instructing the jury on nominative fair use.  DistBr. 22-23 ("As for the jury instructions, GmbH maintained its objection to incorporating a nominative fair use instruction."); AppxA145; AppxA526-528.

Nor does the "invited error" doctrine help Distributor.  In all the cases to which Distributor cites, the ruling attacked on appeal was *the same one* the appellant had previously requested.  Distributor cites no authority applying the "invited error" against a party who undisputedly objected to an instruction.

Distributor next tries to flip the burden by arguing that the record is silent on how the jury applied the defense (DistBr. 47-49).  That is irrelevant.  If the "instruction[ ] w[as] capable of confusing and thereby misleading the jury," the Court grants a new trial unless the erroneous instruction was harmless.  *Mosley v. Wilson*, 102 F.3d 85, 94 (3d Cir. 1996).  An erroneous jury instruction is not harmless unless "there is a high probability that the error did not affect the

outcome of the case." *Woodson v. Scott Paper Co.*, 109 F.3d 913, 931 (3d Cir. 1997); *see also Mosley*, 102 F.3d at 95.

Finally, Distributor contends that the consistency between the jury's verdict on trademark infringement and breach of contract suggests that the nominative fair use instruction did not confuse it on trademark infringement.  DistBr. 47-49.  But when the propriety "of a jury instruction is at issue, an appellate court may not review the evidence in the light most favorable to the verdict winner." *Wyman*, 718 F.2d at 65.  In other words, "[i]f the jury was misled as to the law on a material point," this Court does not "presume that the jury applied the appropriate standard in deciding [an issue]."  *Id*. (citation omitted; brackets in original); *see also Hunziker v. Scheidemantle*, 543 F.2d 489, 498 (3d Cir. 1976) ("it is not our function to speculate on how, or to what extent, or whether, the FAA regulations were relied upon by the jury").  Given that the jury received an instruction that it should not have received on a complicated area of law, this Court presumes the instruction might have had influence and orders a new trial.

**III.    This Court Should Order a New Trial Because the District Court Abused Its Discretion By Excluding ARTOSS GmbH's Evidence Regarding Distributor's Inventory Management Practices and Failure to Apply "First-In-First-Out" Practices**

The trial court abused its discretion by excluding ARTOSS GmbH's FIFO evidence.

**A.    ARTOSS GmbH's Evidence Regarding Inventory Management and FIFO Was Relevant**

Distributor cannot explain how ARTOSS GmbH's fact evidence and expert testimony on "First-In-First-Out" (FIFO) inventory management was not relevant to refute Distributor's claim for breach of the implied covenant of good faith and fair dealing. Therefore, Distributor's 60-page brief never once mentions that claim, or the related jury instruction. Distributor does not deny that it pointed the jury to the instruction in closing argument. AppxA590-591. Excluding evidence relevant to refuting that claim was an abuse of discretion.[4]

The trial court instructed that breach of the implied covenant turns on whether the Parties acted "in an arbitrary or unreasonable manner" and "deal[t] honestly and fairly with each other[.]" AppxA544.1-545 ARTOSS GmbH's FIFO-related evidence would have shown that ARTOSS GmbH acted fairly and

---

[4] This Court should assess whether ARTOSS GmbH's FIFO evidence was relevant under the abuse of discretion standard. *See Forrest v. Parry*, 930 F.3d 93, 113-14 (3d Cir. 2019); *Rolick v. Collins Pine Co.*, 975 F.2d 1009, 1014 (3d Cir. 1992); *GN Netcom, Inc. v. Plantronics, Inc.*, 930 F.3d 76, 82 (3d Cir. 2019).

reasonably when it eventually rejected Distributor purchase orders, and that
Distributor acted unreasonably and negligently by (a) failing to follow industry
norms that guard against product expiring on the shelf, and (b) accumulating
$1.0 million in unused and unpaid-for aging inventory. ARTOSS GmbH
contended that Distributor's failure to apply industry-standard FIFO practices to
manage its inventory led to the accumulation and eventual pre-sale expiration of
the inventory. AppxA118-128; AppxA136-139. Distributor asserted that
ARTOSS GmbH asked it to take on the surplus product as a favor. DistBr. 19, 56.
ARTOSS GmbH's proffered evidence would have given the jury "the ability to
make an informed decision about" this dispute. *GN Netcom*, 930 F.3d at 86.

Because it would have "aided" ARTOSS GmbH in establishing a "material
fact," the excluded FIFO evidence "more than me[t] the low threshold [for
relevance] set by Rule 401[.]" *Forrest*, 930 F.3d at 116; *see also GN Netcom*, 930
F.3d at 86 (evidence that went to satisfying jury instruction "clear[ed] the baseline
relevance hurdle of Rules 401 and 402").

Distributor argues that ARTOSS GmbH's FIFO evidence was irrelevant to
its breach of express contract claim. DistBr. 26, 52 ("FIFO was [not] a contractual
obligation"). That is wrong, but irrelevant because the evidence was also relevant
to breach of implied covenant. Under FRE 401 and 402, evidence "is only
irrelevant if it bears on no aspect of the overarching theory and its underlying

elements." *Forrest*, 930 F.3d at 114-15; *see also GN Netcom*, 930 F.3d at 85; *McQueeney v. Wilmington Tr. Co.*, 779 F.2d 916, 922 (3d Cir. 1985).

Nor has ARTOSS GmbH "overstate[d] the scope" (DistBr. 52) of the trial court's orders. The order on Distributor's Motion in Limine #1 stated that "evidence of FIFO practices is irrelevant and unnecessary to resolve the[ ] claims." Appx17. The court's ruling on Distributor's *Daubert* motion likewise precluded ARTOSS GmbH's industry expert, Edward J. Buthusiem, from testifying on "industry inventory standards," including FIFO. Appx19-20. The district judge thus precluded ARTOSS GmbH from introducing *any* evidence of Distributor's failure to follow FIFO practices.

The error was not harmless just because ARTOSS GmbH was able to "introduce[ ] evidence regarding [Distributor's] inventory practices, inventory levels, and the purported economic strain placed on [ARTOSS] GmbH by those practices." DistBr. 21, 53-55. The jury never heard an expert say that Distributor failed to implement normal industry practices that would prevent that outcome. In fact, not one of the string cites from Distributor's evidentiary cites shows any witness discussing FIFO practices.

Distributor does not deny, and indeed doubles down on, its own false, self-serving account of why it stockpiled so much product. DistBr. 19-20, 56-57. Allowing Distributor to advance its own story while excluding ARTOSS GmbH's

competing evidence was an abuse of discretion.  *See Renda v. King*, 347 F.3d 550, 555-56 (3d Cir. 2003) (where plaintiff attacked defendant's character, "counterproof … should no doubt be admitted") (citation omitted); *McQueeney*, 779 F.2d at 930-31 (where plaintiff argued he worked 8-10 months per year, district "court[ ] err[ed] in excluding" defendant's documents showing he worked 5 months per year); *Forrest*, 930 F.3d at 116.

**B.    The FIFO Evidence Would Also Have Been Admissible Under FRE 403**

The trial judge did not exclude ARTOSS GmbH's evidence under FRE 403 – he excluded it solely on the ground that it was irrelevant.  The judge accordingly did not conduct the "balancing analysis" that this Court "strongly prefers" when considering Rule 403 motions.  *See GN Netcom*, 930 F.3d at 85-86.  Thus, to the extent this Court considers whether, despite its obvious relevance, the FIFO evidence was nevertheless overly confusing or cumulative, the Court should consider the question de novo, without giving any deference to the decision below. *See Ansell v. Green Acres Contracting Co.*, 347 F.3d 515, 525 (3d Cir. 2003); *United States v. Himelwright*, 42 F.3d 777, 781 (3d Cir. 1994); *Toledo Mack Sales & Serv., Inc. v. Mack Trucks, Inc.*, 386 F. App'x 214, 219 (3d Cir. 2010).  Under that standard of review – or any standard – the FIFO evidence that the district court struck was admissible.

"[T]here is a strong presumption that relevant evidence should be admitted, and thus for exclusion under Rule 403 to be justified, the probative value of evidence must be 'substantially outweighed' by the problems in admitting it." *GN Netcom*, 930 F.3d at 85 (citation omitted); *see also McQueeney*, 779 F.2d at 923 ("the danger of improper influence was not sufficient to 'substantially outweigh' the probative value of the evidence"). "In sum, highly probative evidence is 'exceptionally difficult to exclude'" under FRE 403. *GN Netcom*, 930 F.3d at 85 (citation omitted). Distributor cannot make that showing here.

As discussed above, the excluded FIFO-related fact evidence and expert testimony was highly relevant. Distributor would have to make an exceedingly strong showing of prejudice to outweigh this significant probative value. FIFO is not a complex or time-consuming concept. Juries in Delaware routinely decide much more complex facts. Indeed, Distributor asserted that allowing an expert to testify regarding FIFO practices would be "disrespectful to the intelligence of the jury" because the principle was a matter of "common sense." AppxA116. What the jury needed to hear, but did not, is that distributors in this industry are *expected* to implement FIFO and it is fair and reasonable to terminate them if they do not.

FIFO testimony would not have misled the "jury into believing FIFO was a contractual obligation" (DistBr. 52), and "[i]f confusion or misdirection was a

24

concern, the court could have provided a limiting instruction." *GN Netcom*, 930

F.3d at 87 (citing *McQueeney*, 779 F.2d at 923 n. 8).

### C.    The District Court's Errors Were Not Harmless

To show the error was "harmless," Distributor must demonstrate "it is highly

probable that the error[s] did not affect the outcome of the case." *GN Netcom*, 930

F.3d at 88 (citations omitted). "[T]he court [must] have a sure conviction that the

error did not prejudice the [appellant][.]" *Id* at 88-89 (citations and internal

quotations marks omitted); *see also Renda*, 347 F.3d at 556; *McQueeney*, 779 F.2d

at 928.  Distributor falls short.

It contends that "ARTOSS GmbH was still allowed to present substantial

evidence regarding [Distributor's] inventory levels, ordering practices," *etc*.

DistBr. 56.  None of that is cumulative of an expert explaining that FIFO practices

are an industry norm.  *See Renda*, 347 F.3d at 556-57 (error not harmless where

excluded evidence was not cumulative).

Finally, Distributor invites this Court to usurp the jury and accept as a fact

Distributor's argument that ARTOSS GmbH caused the buildup, and conclude it

was therefore harmless to exclude evidence to the contrary.  DistBr. 56-57.  The

question on appeal is only whether the excluded evidence tended to refute

Distributor's case.  *See McQueeney*, 779 F.2d at 928 (error not harmless where

"district court's refusal to admit the evidence … impaired the defendants' ability to

discredit a central element of the plaintiff's case").  Distributor's argument only underscores why new trial is needed.

## IV. This Court Should Reverse The Trial Court's Denial of ARTOSS GmbH's Cross-Motion to Amend The Judgment, and Order Transfer of Trademarks and Domain Names

Distributor raises only procedural arguments regarding rectification, arguing this Court cannot reverse the district court's denial of ARTOSS GmbH's post-trial motion.  These arguments fail because Distributor cannot dispute that Count VIII from ARTOSS GmbH's counterclaims expressly asked for rectification.  AppxA84 at ¶¶156-163.

Distributor incorrectly asserts that "[r]ectification [under Section 1119] does not constitute an independent cause of action, but rather is [merely] a form of equitable relief[.]"  DistBr. 58.  Actually, such counterclaims are the typical vehicle for seeking rectification.  *See Firefly Digital Inc. v. Google Inc*., 817 F. Supp. 2d 846, 867-68 & n. 9 (W.D. La. 2011) ("[a] request for cancellation pursuant to § 1119 ordinarily is made as a counterclaim in an infringement action"); *E.T. Browne Drug Co. v. Cococare Prod., Inc*., 538 F.3d 185, 201-02 (3d Cir. 2008) (holding that "District Court should order that an appropriate disclaimer should be entered on the principal register" in light of defendant's Section 1119 "counterclaim[ ] for modification of [plaintiff's] larger mark"); *Nasalok Coating Corp. v. Nylok Corp*., 522 F.3d 1320, 1325 (Fed. Cir. 2008) ("In response to an

action for infringement, a defendant may assert a counterclaim of invalidity.") (quoting Section 2119); *Holley Performance Prod., Inc. v. Quick Fuel Tech., Inc.*, 624 F. Supp. 2d 610, 613 (W.D. Ky. 2008) ("[C]ounterclaims for declaratory relief are presumptively appropriate.") (citing Section 1119).[5]

Section 1119 authorizes rectification when there is "a controversy as to the validity of or interference with a registered mark." *E.T. Browne*, 538 F.3d at 201; *see also Neva, Inc. v. Christian Duplications Int'l, Inc.*, 743 F. Supp. 1533, 1549 (M.D. Fla. 1990) (courts authorized to grant relief "where the validity of the mark is placed in issue"). The Parties dispute who owns the trademarks at issue. That is why Distributor tries to convince this Court that it owns them. DistBr. 11-17, 30-34, 36-37. ARTOSS GmbH's Counterclaim VIII more than sufficed to put rectification at issue.

Based on language from a few inapposite decisions, Distributor argues that rectification decisions are unappealable. DistBr. 57-58. To the contrary, federal appeals courts have authority to review and reverse district court judgments based on Section 1119. A few examples include *Abercrombie & Fitch Co. v. Hunting*

---

[5] Several decisions confirm this well-established rule by declining to grant Section 1119 relief where a party failed to assert a counterclaim seeking such a remedy. *See Empresa Cubana del Tabaco v. Culbro Corp.*, 541 F.3d 476, 478-79 (2d Cir. 2008); *OBX-Stock, Inc. v. Bicast, Inc.*, 558 F.3d 334, 342-43 (4th Cir. 2009).

*World, Inc.*, 537 F.2d 4, 13-14 (2d Cir. 1976), *E.T. Browne*, 538 F.3d at 201-02,

and *Aromatique, Inc. v. Gold Seal, Inc.*, 28 F.3d 863, 866, 875 (8th Cir. 1994).

The standard of review is abuse of discretion. *See Cent. Mfg., Inc. v. Brett*,

492 F.3d 876, 883 (7th Cir. 2007); *Empresa Cubana*, 541 F.3d at 478.

Furthermore, the appellate court has independent authority to order rectification.

*See E.T. Browne*, 538 F.3d at 201-02 (granting Section 1119 relief that did not

conform with judgment below); *Aromatique*, 28 F.3d at 866, 875 (same);

*Abercrombie & Fitch*, 537 F.2d at 13 (same); *Cent. Mfg.*, 492 F.3d at 883.

Neither *Neva*, 743 F. Supp. 1533, nor *Fair Isaac Corp. v. Experian Info.*

*Sols. Inc.*, 711 F. Supp. 2d 991 (D. Minn. 2010), establishes that district court

rectification decisions are unappealable.  Those cases ordered cancellation based

on jury findings, but neither suggests that appellate courts cannot review them.

Distributor cites other inapposite cases.  In *Manganaro Foods, Inc. v.*

*Manganaro's Hero-Boy, Inc.*, No. 01 Civ. 0849 (JGK), 2002 WL 1560789

(S.D.N.Y. July 15, 2002), because the infringement and false designation claims

brought there did not actually "involve, or [ ] have any effect upon" the marks that

plaintiff sought to register, "there [wa]s no basis to direct registration of the

plaintiff's alleged mark." *Id*. at *10.  ARTOSS GmbH's counterclaims for breach

of contract, termination, false designation of origin, and rectification all involved

Distributor's unauthorized registration of the marks at issue.

*Tiffany & Co. v. Costco Wholesale Corp.*, 994 F. Supp. 2d 474 (S.D.N.Y. 2014), noted that Section 1119 allows courts to partially cancel or limit a registered trademark instead of cancelling it completely.  No relevant broader rule can be inferred from dicta about that.  *Id.* at 481-82.  *Abercrombie & Fitch*, 537 F.2d at 13, is the same.

This Court should order the transfer of all NanoBone-related registrations and applications from Distributor to ARTOSS GmbH.

## CONCLUSION

The judgment below should be reversed, the jury's damages award vacated, and all of Distributor's NanoBone-related trademark registrations ordered to be transferred to ARTOSS GmbH.

Dated: January 3, 2024
New York, New York

Respectfully submitted,

Maschoff Brennan LLP

*By:* s/ Sherman W. Kahn
Sherman W. Kahn
skahn@mabr.com
15 W. 26th St. Seventh Floor
New York, NY 10010
Tel: (212) 529-5131
Fax: (212) 529-5132

Marc J. Pernick
mpernick@mabr.com
Jason R. Bartlett
jbartlett@mabr.com
450 Sansome Street, Suite 1005
San Francisco, CA 94111
Tel: (415) 738-6228
Fax: (415) 738-2315

*Attorneys for Defendant-Appellant
ARTOSS GmbH*

## CERTIFICATE OF BAR MEMBERSHIP

The undersigned hereby certifies pursuant to LAR 46.1 that the attorneys whose name appear on the ARTOSS GmbH, Defendant-Appellant, was duly admitted to Bar of the United States Court of Appeals for the Third Circuit on February 17, 2023 and are presently members in good standing at the Bar of said Court.

Dated:  January 3, 2024
        New York, NY

*By:* s/ Sherman W. Kahn

## CERTIFICATE OF COMPLIANCE UNDER
## FRAP 32(a) AND THIRD CIRCUIT LAR 31.1(c)

I hereby certify that the foregoing brief complies with the type-volume limitations of Federal Rules of Appellate Procedure 32(a) because it contains 6,418 words.

This brief complies with the typeface requirement of Fed. R. App. P. 32(a)(5) and the type style-requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface, using Microsoft Word 2016 in Times New Roman 14-point font.

Pursuant to Local Appellate Rule 31.1(c), I hereby certify that the text of the brief filed electronically is identical to the text in the paper copies of the brief, and a virus-detection program (Windows Defender Antivirus) was run on the file containing this electronic brief, and no virus was detected.

Dated:  January 3, 2024

*By:* s/ Sherman W. Kahn
     Sherman W. Kahn

32

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Third Circuit by using the CM/ECF system on January 3, 2023.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECM system.

Dated January 3, 2024

s/ Sherman W. Kahn